PAW PAW DEPOSITORS CORP. *v.* C. G. ALBERT, INC.

1. BANKS AND BANKING—CONSERVATORS—SUCCESSOR TO LEGAL RIGHTS OF THE BANK.

> State banking commissioner, in taking over the custody and management of a bank under the emergency banking act as conservator with the consent of the governor, succeeded to all of the legal rights of the bank (3 Comp. Laws 1929, § 11945; Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

2. SAME—STATUTORY LIABILITY—ORDER OF ASSESSMENT.

> State banking commissioner's order, made with the approval of the governor, ordering assessment as "a personal liability of each stockholder equal to the par value of the stock he owns" together with conservator's notice to defendant stockholder to pay the amount of its assessment *held*, to satisfy requirements of statute under which such liability was imposed in so far as designation of individual liability and notice were necessary (3 Comp. Laws 1929, § 11945).

3. SAME—SALE OF STOCK OF CLOSED BANK—ACTION TO ENFORCE STATUTORY LIABILITY BY LIQUIDATING AGENT.

> Fact that stock of bank closed during the bank holidays of 1933 was sold to another State bank and original bank ceased to exist *held*, not to prevent enforcement of statutory liability of stockholders of closed bank by plaintiff corporation, formed to take over unacceptable and charged-off assets under reorganization agreement, since the agreement transferred the legal title of the interest covered by the statutory power to plaintiff (3 Comp. Laws 1929, § 11945; Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

4. SAME—CANCELLATION OF STOCK—STATUTORY LIABILITY—REORGANIZATION.

> Under record showing publication and posting of notice of plan of reorganization of bank in accordance with statute and

participation in reorganization by all stockholders whose stock had not been forfeited by cancellation for failure to pay assessment, whether or not defendant's stock was legally cancelled for such failure to pay *held,* not to relieve it from statutory liability to pay such assessment at suit of corporation formed to take over unacceptable and charged-off assets of closed bank (3 Comp. Laws 1929, § 11945; Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

Fead, C. J., and Wiest and Chandler, JJ., dissenting.

Appeal from Van Buren; Hartrick (George B.), J., presiding. Submitted June 10, 1937. (Docket No. 58, Calendar No. 39,415.) Decided October 4, 1937.

Bill by Paw Paw Depositors Corporation, a Michigan corporation, against C. G. Albert, Inc., a Michigan corporation, to enforce stockholder's assessment. Decree for plaintiff. Defendant appeals. Affirmed.

*David Anderson, Sr.* (*Burritt Hamilton,* of counsel), for plaintiff.

*Mason, Sharpe & Stratton,* for defendant.

Potter, J. Plaintiff filed a bill against defendant to enforce its statutory stockholder's liability in the amount of $14,500 growing out of defendant being a stockholder in the Paw Paw Savings Bank.

The Paw Paw Savings Bank was closed by order of the governor February 14, 1933, in pursuance of a telegram from the banking commissioner enforcing a bank holiday. February 22, 1933, it was authorized to resume a limited banking business. The bank reopened February 23, 1933, and continued until March 6, 1933, when it was again closed by proclamation of the President of the United States.[*] It con-

_____

* See No. 2039 (12 USCA, § 95 note).—Reporter.

tinued closed under the order of the President until August 4, 1934, when it was reopened. It reopened March 10, 1933, to carry on a trust business. A conservator was appointed March 30, 1933.

January 3, 1934, an assessment on stockholders was made by the banking commissioner, with the approval of the governor. The banking commissioner had the power, with the consent of the governor, to take over as conservator the custody and management of the bank in question. Act No. 32, Pub. Acts 1933, as amended. The banking commissioner upon the taking over of the bank as conservator succeeded to all of the legal rights of the bank. 3 Comp. Laws 1929, § 11945. The banking commissioner, with the consent of the governor, ordered a 100 per cent. assessment on the stock of the bank.

The stock in question was held by a corporation which was individually liable, equally and ratably, to assessment to satisfy the obligations of the bank to the full amount of the stock held by it. 3 Comp. Laws 1929, § 11945. It is claimed defendant is not liable because the notice of assessment did not specify it was individually liable under section 48 of the general banking act (3 Comp. Laws 1929, § 11945). The State banking commissioner, by and with the approval of the governor, ordered the assessment levied on the stockholders of the bank of the statutory liability, equally and ratably, and not one for another, to satisfy the debts of the bank. The order making the assessment specified:

"Said assessment is a personal liability of each stockholder equal to the par value of the stock he owns."

After this assessment was made and on January 10, 1934, defendant was given notice by the conserva-

tor of the levying of the assessment above mentioned by order of the commissioner of banking, and approval by the governor, and stated:

"You are ordered to appear at the Paw Paw Savings Bank and pay your assessment amounting to $14,500 on 145 shares of stock."

Up to this time there was no question of defendant's liability.

A petition for reorganization of the bank was filed in the circuit court of Van Buren county by Patrick H. O'Brien, attorney general for the State of Michigan, on February 28, 1934; notices were given; and on March 20, 1934, the order for reopening the bank was filed and entered. This order apparently was made on March 20, 1934, by Honorable Fred T. Miles, circuit judge of the 20th judicial circuit, sitting in the circuit court for Van Buren county. This order provided for the turning over of the assets; that the bank could continue to receive trust deposits; it was directed to proceed forthwith with the collection of the statutory assessment against all stockholders who had failed and neglected to pay their assessment; and that the bank upon reopening should be subrogated to all the rights and privileges conferred upon the conservator in carrying on and transacting the business.

The Paw Paw Depositors Corporation had been organized and the bank was directed to fulfill, carry out and complete the agreement and to transfer to the Paw Paw Depositors Corporation all of its unacceptable and charged-off assets. It recites that the plan of reorganization provides the commissioner of banking proceed to collect the 100 per cent. stock assessment against all stockholders pursuant to the statute, that such assessment had been levied and approved and ratified the assessment as levied.

It provided for the cancellation of the stock of any stockholder on which the assessment remained unpaid at the expiration of 10 days from the entry of the order, but that such cancellation of stock should not relieve the owner of the stock or any other person or persons legally liable for the payment of assessments from the statutory liability and responsibility to pay such assessment which should be enforced in a suit at law or in equity, and that payment of the assessment levied, after the stock was cancelled, would not entitle the person paying the assessment to the return of the stock. It provided that upon the expiration of the 10 days from the entry of the order the shareholders who had paid their assessment and the subscribers for stock in the reorganized bank should meet and elect officers, and for the turning over of the business by the conservator to the reorganized bank.

Defendant claims it is essential to the enforcement of a liability of an owner of bank stock that notice of the personal liability involved in the assessment be given to the stockholder. There is no question in this case that the stockholder was charged with notice of such statutory liability which was a part of the contract by which it acquired the stock. The order of the commissioner of the banking department directing the assessment of the 100 per cent. statutory liability recites that such assessment "is a personal liability of each stockholder." The banking commissioner had no right to levy any other assessment. The mere levying of the assessment was sufficient to give the defendant notice that the banking commissioner was attempting to enforce the statutory liability of the stockholder. Actual notice was given to the defendant. It was directed to appear and pay the amount of such assessment.

It is contended that, inasmuch as the stock in the bank in question after its reorganization was sold to another State bank and the Paw Paw Savings Bank ceased to exist, defendant's liability may not be enforced because the plaintiff may not act as a liquidating agent of a nonexistent corporation. We think there is no question the instrument transferring the statutory liability to the plaintiff conveyed the legal title of the interest covered by the power and that plaintiff has a right to sue. *Baker v. Baird,* 79 Mich. 255; *Weaver v. Richards,* 144 Mich. 395 (6 L. R. A. [N. S.] 855). Nor do we think there is any question that the right to enforce the statutory liability of the stockholders in the bank in question passed to the plaintiff under the facts in this case.

Defendant also claims the failure to publish and post notice of plan of reorganization as required by Act No. 32, § 7, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933, invalidates the proceedings. The answer to this is, the record shows the affidavit of posting and order to show cause, to which is attached a printed copy of that order, all of which is in the chancery file relating to the reorganization of the bank. The record shows such notice was posted on the door of the bank and it was also published in the newspaper printed and published in Paw Paw. All of the stockholders in the bank whose right had not been forfeited by the cancellation of their stock in pursuance of the order of the court participated in the plan of reorganization. Regardless of whether defendant's stock was legally cancelled for failure to pay the assessment levied against it or not, a question it is not necessary to decide, defendant's statutory liability to pay the assessment has not been discharged and by mesne conveyances the right

to enforce such liability has become vested in plaintiff.

Decree of the trial court affirmed, with costs.

North, Butzel, Bushnell, and Sharpe, JJ., concurred with Potter, J.

Fead, C. J. (*dissenting*). I cannot agree with Mr. Justice Potter.

An outline of the statutes concerning bank reorganizations and stockholders' assessments may be helpful. It can be found in *Re Burger's Estate,* 276 Mich. 485.

Plaintiff claims the right to recover the assessment by virtue of assignment from the bank itself. Defendant contends the assessment is nonassignable by the bank. We need not discuss this point because other considerations are determinative.

The State banking commissioner took charge of the bank as conservator in March, 1933. As commissioner he levied the assessment against stockholders January 3, 1934. January 10th, the "conservator" in charge under the commissioner notified defendant of the assessment and ordered it to appear and pay the same.

These acts were authorized by, and only by, the emergency banking act, Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933. That statute empowered the banking commissioner, while conservator, to—

"levy, enforce, and collect the statutory and/or individual liability of the stockholders * * * in such a manner, in such instalments, to be paid at such times and under such terms as he may deem advisable."

It also authorized the commissioner to put into effect a plan of reorganization, without the inter-

vention of a court, on posting and publishing "in full the details of such plan" and with notice that, within 30 days after the last publication, creditors, stockholders or depositors could have the plan reviewed and their personal rights determined by instituting proceedings in chancery. In case of reorganization, the commissioner—"may reserve the right to enforce the individual liability of the stockholders until such time as he shall determine the advisability therefor."

Plaintiff attempts to segregate the levy of assessment so made from all future proceedings and urges that invalidity of the latter cannot affect the assessment. There might be some virtue in the contention if the commissioner had continued to hold the bank as conservator or had appointed a receiver or had conducted a reorganization under the law of 1933. But even this would not give plaintiff the right to sue for the assessment because the banking commissioner (who was the only person the statute empowered to enforce and collect the assessment before reorganization), did not assign it to plaintiff nor authorize it to bring the action.

However, the banking commissioner did not continue to exercise his powers under the act of 1933. On the contrary, he expressly abandoned them. He had the option of continuing to act under the law of 1933 or of proceeding to reorganization under an act of 1932. He chose the latter. Through the attorney general he filed petition in chancery on February 28, 1934, for an order of court approving a plan of "re-opening and/or reorganization of said banking corporation." This proceeding was authorized by, and only by, Act No. 8, Pub. Acts 1932, (1st Ex. Sess.) which permits reorganization on order of a court of chancery, upon plan approved

by depositors representing 85 per cent. of the deposit liability of the bank and by the banking commissioner. An order to show cause was made, posted and published, and stated that depositors could register their objections to the plan on the day of hearing. It was not directed to nor did it mention stockholders or creditors.

This proceeding must stand on its own feet. It can have no support from the law of 1933 because (1) the order to show cause which was posted and published did not set up the details of the plan of reorganization, (2) it was not directed to stockholders and creditors as well as depositors, and (3) it provided a wholly different procedure and remedy than that set up in the law of 1933.

The difference in procedure is important. The remedies are inconsistent. Under the law of 1933 the banking commissioner levied the assessment and controlled the reorganization except to the extent that a depositor, creditor or stockholder could have review by initiating a proceeding in chancery. Under the law of 1932 the banking commissioner is merely a party to the suit and all rights and liabilities are judicially determined by the court; an assessment against stockholders can be levied only if "the court shall deem an assessment necessary to satisfy the debts of such bank;" and if levied, the court includes in its order provision for an assessment and the "receiver [?] shall forthwith proceed to levy and collect such assessment in such manner as the court shall direct."

In its order at bar the court recited that the presented plan of reorganization provided for an assessment to be levied "immediately" by the commissioner of banking, and it appearing that such assessment had been levied, "the court does hereby

approve and ratify said assessment as levied." The
most that can be said for the order is that the
assessment previously levied was adopted by the
court as of the time the order was made. The court
could not give force to an assessment as of a time
prior to its determination that an assessment was
necessary to pay debts.

The order further provided that the shares of
stock of those who did not pay the assessment within
10 days should be cancelled but such stockholders
nevertheless should be liable for the assessment,
while those who paid within 10 days should retain
their stock in the reorganized bank. No notice of
this option and penalty was given defendant.

The order was made without making defendant a
party to the suit, without service of process on it,
personal or substituted, without notice of any kind,
and, so far as the record shows, without knowledge
of defendant, either pending suit or after the order
was made and before the reorganization had been
completed and the bank was in operation. The pro-
ceedings were invalid as to defendant so far as they
purport to impose a liability for assessment on it
because they were without due process of law.

But even if we assume that the proceedings were
valid, the right of plaintiff to sue for the assessment
does not appear. The statute provides that the as-
sessment be collected "in such a manner as the court
shall direct."

In its order the court continued the conservator
in office "for the following purposes only until final
disposition thereof:" "To wind up all trust de-
posits," and "b. To proceed forthwith with the col-
lection of the statutory assessment against all stock-
holders who have failed or neglected to pay their
assessment."

It also provided that the conservator transfer to the bank the "deposits, moneys, funds, assets and property, both real and personal, of said bank, exclusive of all trust deposits," and that upon such transfer the bank should succeed to all the rights of said conservator "in relation to the assets of said bank except trust deposits and collection of the statutory assessment, as heretofore mentioned."

The plan approved provided: "The commissioner will, however, cause said assessment to be collected as provided by law and any collections therefrom shall be transferred to" plaintiff and—"the bank will transfer to said corporation all of its unacceptable and charged-off assets as described in subparagraphs (a) and (b) of paragraph VI hereof," among which was—"Any collections of assessments upon those shares of stock not to be a part of the capital structure of the bank provided for in paragraph 1 hereof."

By order of court, therefore, the enforcement of the assessment was affirmatively withdrawn from the power of the bank, was committed solely to the conservator and plaintiff given right only to the collections when made.  The bank, having no authority over the assessment, could convey none to plaintiff.

Neither horn of the dilemma gives comfort to plaintiff.

If it relies on the assessment made by the banking commissioner, and it does, it cannot recover because (1) the commissioner abandoned the assessment he had made for an inconsistent remedy which required the judgment and order of the court on whether an assessment should be levied, and (2) if he did not abandon the assessment he made, he had sole statutory authority to enforce it and he

made no assignment to plaintiff. If it relies upon the court order, it cannot recover because (1) the proceedings were without due process and void as to defendant, and (2) the order of the court withdrew enforcement of the assessment from the bank, conferred it on the conservator, and the bank could not grant authority to plaintiff to sue.

The result may be unfortunate. Depositors and creditors are entitled to the benefit of the liability of stockholders created by statute. But such liability is legal and must be imposed and collected in accordance with the requirements of the liability and of legal procedure. State departments are as much bound by the law as are private persons. When they depart from clear mandates of the statutes in the exercise of their powers, they cannot bind citizens by their actions. In the instant case the departure was particularly grievous because it attempted to impose liability on the defendant and at the same time deprive it of its stock without notice of a chance to exercise the option granted by the court. The depositors were made parties to the suit and had full opportunity to appear in the proceedings and insist that the stockholders' liability be legally established and provision made for its collection. This court cannot grant power to plaintiff not conferred on it by law or authorized court or officer.

Decree should be reversed, with costs, and without new trial.

WIEST and CHANDLER, JJ., concurred with FEAD, C. J.